CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
12/17/2025
LAURA A. AUSTIN, CLERK
BY: *s/C. Kemp*
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| JIMMY LAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:25-cv-00035 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAESARS VIRGINIA, LLC, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) |         United States District Judge |
| Defendants. | ) | |

This matter is before the court on the motions to dismiss filed by Defendants Caesars Virginia, LLC ("Caesars"), Officer J.T. Land ("Officer Land"), and the City of Danville ("the City").[1] (ECF Nos. 51, 55.) The motions respond to *pro se* Plaintiff Jimmy Lawson's Third Amended Complaint, in which he alleges defamation, false arrest, unlawful detainment, a *Monell* claim, malicious prosecution, and conspiracy to violate his civil rights. (*See* Am. Compl. ("Compl.") [ECF No. 15].) Because Lawson's Complaint asserts only threadbare allegations against the Defendants for all claims, the court will grant the motions in their entirety.

I.   **STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**

The facts are recited as Lawson alleges them in his complaint and, at this stage, the court accepts the allegations as true.[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] Lawson also asserts claims against three Caesars employees identified as John Does #1–3. As the employer of the John Does, Caesars filed its motion to dismiss on behalf of Caesars and the John Does. (*See generally* Mot. Dismiss & Br. of Caesars [ECF Nos. 55, 56].) Officer Land and the City filed a joint motion to dismiss. (ECF No. 51.)

[2] The court is cognizant of its duty to construe *pro se* filings liberally.

- 1 -

On April 12, 2024, Lawson was playing games as "an invited patron" at the Caesars Casino in Danville, Virginia. (Compl. ¶ 9.) While the timeline is unclear, Lawson exited the Casino either before or directly after Caesars and John Does #1–3 "made false statements . . . to law enforcement" that Lawson had made bomb threats, but "no such threats were made." (*Id.* ¶¶ 11, 14.) At that point, Officer Land detained and arrested Lawson on the sidewalk, then took statements from the Caesars employees regarding the incident. (*Id.* ¶¶ 14, 18, 19.) No audio recording exists of Lawson making bomb threats, though he alleges the existence of footage from the Casino's surveillance system and Officer Land's body-worn camera. (*Id.* ¶¶ 12, 13.) Following the arrest, the Commonwealth charged Lawson with making bomb threats, a felony. Va. Code Ann. § 18.2-83. (*Id.* ¶¶ 21, 22.)

After his arrest, Lawson filed this civil action in the U.S. District Court for the Eastern District of Virginia, alleging (1) defamation against Caesars and three Caesars employees, identified as John Does #1–3 (Compl. ¶¶ 33–46), (2) false arrest and unlawful detention under 42 U.S.C. § 1983 against Officer Land (*id.* ¶¶ 47–60), (3) a *Monell* claim against the City under § 1983 (*id.* ¶¶ 61–67), (4) malicious prosecution under § 1983 against the Commonwealth's Attorney for the City of Danville[3] (*id.* ¶¶ 68–74), and (5) conspiracy to violate civil rights under § 1983 against Caesars, John Does #1–3, and Officer Land (*id.* ¶¶ 75–79.) The case was transferred to this court on July 24, 2025. (ECF No. 13.) After the court permitted Lawson to file a third amended complaint on October 7, the remaining Defendants filed motions to

---

[3] In a subsequent amendment, Lawson abandoned claims against the Commonwealth's Attorney. (*See* Order, Oct. 7, 2025 [ECF No. 47].)

- 2 -

dismiss for failure to state a claim. (ECF Nos. 47, 51, 55.) The matter has been fully briefed, and it is now ripe for decision.

## II.  STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557). When evaluating the sufficiency of a complaint, the court is obligated to consider the factual allegations asserted in the complaint as well as any exhibits attached thereto. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing Fed. R. Civ. P. 10(c)).

## III.  DISCUSSION

The court will address Counts I, II, III, and V of Lawson's Third Amended Complaint. Count IV, on the other hand, alleges malicious prosecution against the Commonwealth's Attorney for the City of Danville, whom Lawson did not include as a party in his amended complaint. (*See* ECF No. 47, at 2 n.2 ("Because they are no longer listed as defendants, the Clerk may terminate both the Danville Police Department and the Commonwealth's Attorney

for the City of Danville as defendants, and they are not required [to] file any responsive pleadings.").) Because Count IV fails to state a claim against any party presently before the court, it will be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### a. Count I: Defamation

Lawson asserts a defamation claim against Caesars and John Does #1–3, alleging that these Defendants "falsely stated that Plaintiff made threatening statements" that they "knew or should have known . . . were false" that were then "published to . . . official police reports and court records." (Compl. ¶¶ 35, 39, 41.) In their motion, Caesars and John Does #1–3 argue that the defamation claim is time-barred. (*See* Br. Caesars & John Does at 4–5 [ECF No. 56].) They are correct.

Under Virginia's defamation statute,[4] "[e]very action for injury resulting from libel, slander, insulting words, or defamation shall be brought within one year after the cause of action accrues." Va. Code Ann. § 8.01-247.1. Here, Lawson's defamation claim arose, if at all, on April 12, 2024, the date of the alleged incident, and it would have expired on April 12, 2025. (Compl. ¶ 9.) Lawson did not file his original Complaint until June 6, 2025, more than one year after the alleged defamation. (*See* ECF Nos. 1, 48.) Accordingly, because Lawson's claim is time-barred, the court will dismiss this claim.

### b. Count II: False Arrest Under 42 U.S.C. § 1983

---

[4] The court has supplemental jurisdiction over Lawson's state-law claims. 28 U.S.C. § 1367. When analyzing state-law claims, federal courts must look to the relevant law of the state in which the alleged harm occurred—in this case, Virginia law controls. *See Real Time Med. Sys., Inc. v. PointClickCare Tech., Inc.*, 131 F.4th 205, 224 (4th Cir. 2025).

In Count II of his Complaint, Lawson alleges that Officer Land lacked both reasonable suspicion and probable cause to detain and arrest him, respectively, thereby violating Lawson's Fourth Amendment right to be free from unreasonable searches and seizures. (Compl. ¶¶ 47–60.) Officer Land moves to dismiss this claim. (Br. Officer Land & City at 4 [ECF No. 52].) Because Lawson's allegations establish that, as a matter of law, there was probable cause to effectuate the arrest—and by implication, reasonable suspicion to detain him[5]—the court dismisses this claim.

To state a claim under § 1983, a plaintiff must first "allege that some person has deprived him of a federal right . . . [and s]econd, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). At the first step, Lawson alleges that the unlawful arrest and detention violated his Fourth Amendment right to be free from unreasonable search and seizure. *See* U.S. Const. Amend. IV. "It is well-settled under Fourth Amendment jurisprudence that a police officer may lawfully arrest an individual in a public place without a warrant if the officer has probable cause to believe that the individual has committed, is committing, or is about to commit a crime." *United States v. Dickey–Bey*, 393 F.3d 449, 453–54 (4th Cir. 2004) (citations omitted). Probable cause is "fluid concept," *Illinois v. Gates*, 462 U.S. 213, 230 (1983), and is assessed objectively based on the knowledge the officer had at the time of the arrest. *See United*

---

[5] Lawson's allegations of both unlawful detainment and arrest arise from the same facts. (*See* Compl. ¶¶ 47–60.) But because probable cause is a more demanding standard than reasonable suspicion, the court focuses this analysis primarily on whether Officer Land had probable cause to arrest him immediately after he was detained, rather than doing a separate analysis for reasonable suspicion and unreasonable detention. The court ultimately concludes that Officer Land had probable cause to arrest Lawson because of the reported bomb threats. Thus, the officer necessarily had reasonable suspicion to detain him. *See United States v. Perkins*, 363 F.3d 317, 321 (4th Cir. 2004) (citing *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

*States v. Gray*, 137 F.3d 765, 770 (4th Cir. 1998); *Ferrara v. Hunt*, No. 0:09-2112, 2012 WL 1044488, at *4 (D.S.C. Mar. 28, 2012) (quoting *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 439 (7th Cir. 1986) ("[I]t's what the police know, not whether they know the truth, that matters.")).

In this case, Lawson contends that Officer Land conducted an unconstitutional detention and arrest because he relied "solely on unverified third-party allegations, without any independent investigation or corroborating evidence," alleging that Officer Land should have reviewed the Casino's surveillance footage and interviewed witnesses prior to the arrest. (Compl. ¶ 16.) But this assertion is based on an incorrect interpretation of the law and the facts alleged in Lawson's own Complaint. To be sure, "an anonymous tip, absent some corroboration or sufficient other indicia of reliability," is not sufficient to establish reasonable suspicion, let alone probable cause. *United States v. Massenburg*, 654 F.3d 480, 488 (4th Cir. 2011) (rejecting that a "vague" report from an anonymous informant that shots were "possibly fired" two blocks south of informant's location, without corroboration, was enough to establish either reasonable suspicion or probable cause). But the credibility of third-party tips increases if there are multiple, corroborating accounts of the suspected crime, especially from eyewitnesses. *United States v. Cockrell*, No. 3:19-CR-00360-FDW-DSC, 2021 WL 3828741, at *2 (W.D.N.C. Aug. 4, 2021) (Report & Recommendation) ("Information from informants has been found to establish or contribute to the probable cause necessary to justify a warrantless arrest."), *adopted by*, 2021 WL 3828554 (W.D.N.C. Aug. 26, 2021); *Ferrara*, 2012 WL 1044488, at *3; *United States v. Galloway*, 274 F. App'x 241, 245 (4th Cir. 2008). Without indications of unreliability or contradiction, statements from the crime victim alone can also establish probable cause. *See McKinney v. Richland Cnty. Sheriff's Dep't* , 431 F.3d 415, 418 (4th Cir. 2005);

*Ferrara*, 2012 WL 1044488, at *4 ("As the Seventh Circuit stated . . . '[t]he complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate.'" (alterations in original) (quoting *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003))).

In *Ferrara v. Hunt*, for example, the district court weighed the reliability of multiple, consistent tips to law enforcement and their sufficiency in establishing probable cause. 2021 WL 1044488, at *1. Distinguishing that case from other precedent involving only singular, anonymous informants' tips, the court observed that

> [i]n this matter, the alleged victim was not an anonymous tipster but a person with reportedly first[-]hand knowledge regarding the accused's actions and who had purportedly undergone a physical assault and other actions at the hands of Plaintiff.
> . . .
> The Court finds that [the defendant-officer] had probable cause for the arrest of [the plaintiff] based upon the multiple consistent written and oral statements of the alleged victim and the corroborating statement of the neighbor.

*Id.* at *4.

*Ferrara* is instructive. Immediately preceding Lawson's arrest, three employees reported to Officer Land that Lawson—*specifically* Lawson—made bomb threats in a manner violative of Virginia law. *See* Va. Code Ann. § 18.2-83(A).[6] Unlike in other cases involving one

---

[6] The statute reads:

> Any person (i) who makes and communicates to another by any means any threat to bomb, burn, destroy, discharge a firearm within or at, or in any manner damage any place of assembly, building or other structure, or means of transportation or (ii) who communicates to another, by any means, information, knowing the same to be false, as to the existence of any peril of bombing, burning, destruction, discharging of a firearm within or at, or

- 7 -

anonymous statement, *see, e.g.*, *Massenburg*, 654 F.3d at 488, probable cause was readily established by three consistent statements—both oral and written—of victim-employees who were contemporaneously present at the time Lawson allegedly made his threats. (*See* Compl. ¶¶ 10, 19). *See also Ferrara*, 2021 WL 1044488, at *4; *McKinney*, 431 F.3d at 418. Even if Lawson's allegations are true that the employees reported ultimately false information to Officer Land,[7] the Complaint does not state or imply that the tips were suspicious or unreliable on their face, such that Officer Land knew or should have known that the informants' tips were false or should have made further inquiries to confirm their veracity. *See Gray*, 137 F.3d at 770.

Additionally, "on August 19, 2024, a Grand Jury returned a true bill, resulting in [Lawson's] indictment" on felony bomb charges. (Br. Officer Land & City at 7 & Ex. A.) "[A]n indictment, 'fair upon its face,' returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause[.]" *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975) (citations omitted) (ruling in the malicious prosecution context); *see also Durham v. Horner*, 690 F.3d 183, 188–89 (4th Cir. 2012) (observing that, in the malicious prosecution context, plaintiff could not establish a constitutional violation because three indictments established probable cause); *Brown v. Grant*, No. 8:25-cv-00495-DCC-KFM, 2025 WL 1447441, at *4 (D.S.C. Mar.

---

                damage to any such place of assembly, building or other structure, or means
                of transportation is guilty of a Class 5 felony, provided, however, that if such
                person is under 18 years of age, he is guilty of a Class 1 misdemeanor.

Va. Code Ann. § 18.2-83(A).

[7] To "demonstrat[e] the falsity of [the Caesars employes' statements]," Lawson alleges that there is no audio evidence of his threats, and that the Casino's surveillance footage does not show that threatening statements were made. (Compl. ¶ 12.) These allegations do little to advance Lawson's argument. First, the absence of evidence is not evidence of absence, particularly when juxtaposed against Lawson's own allegations that three employees provided official statements that he made bomb threats. (*See id.* ¶ 10). Second, Lawson's entire Complaint hinges on his speaking—or not speaking—bomb threats, so the court is not clear as to how the existence of only surveillance footage, without audio evidence, substantiates this assertion.

14, 2025) (rejecting plaintiff's § 1983 claims for false arrest by taking judicial notice of the underlying charges and related grand jury indictments); *Provet v. South Carolina*, No. 6:07-1094-GRA-WMC, 2007 WL 1847849, at *5 (D.S.C. June 25, 2007) ("The plaintiff's implicit claims of false arrest are precluded because of the Grand Jury's issuance of an indictment[.]").

Regardless of Lawson's underlying issues with the prosecutor's alleged misconduct in securing it (Compl. ¶¶ 24, 69), the court takes judicial notice of the Indictment which, on its face, independently establishes probable cause for the earlier arrest. *See, e.g.*, *Brown*, 2025 WL 1447441, at *4. The Indictment, along with Officer Land's receipt of multiple, reliable tips regarding Lawson's bomb threats, establish probable cause as a matter of law and defeat Lawson's false arrest and unlawful detention claim.[8] Therefore, Count II of Lawson's Complaint will be dismissed as well.

### c. Count III: *Monell* Liability Under 42 U.S.C. § 1983

In Count III, Lawson asserts a *Monell* claim against the City of Danville, stating that the City's policies and failure to train caused a constitutional deprivation—to wit: his *unconstitutional* detention or arrest. (Compl. ¶ 61–67.) Because Lawson's Complaint only formulaically recites the elements of a *Monell* claim with no factual support, and because his arrest was supported by probable cause, the court will dismiss Count III.

---

[8] Alternatively, Lawson's claim must be dismissed because, without an allegation of a constitutional deprivation, Officer Land is entitled to qualified immunity. *See Rogers v. Pendleton*, 249 F.3d 279, 286 (4th Cir. 2001) ("To determine whether the officers are entitled to qualified immunity, the steps are sequential: we must first determine *whether the plaintiff has alleged the deprivation of an actual constitutional right at all*, before proceeding to determine whether that right was clearly established at the time of the alleged violation." (cleaned up) (citations and internal quotations omitted) (emphasis added)); *Ferrara*, 2012 WL 1044488, at *4 ("[The defendant-officer] is entitled to qualified immunity because his conduct was objectively reasonable and there was probable cause to effect [the plaintiff's] arrest.").

In *Monell v. Department of Social Services of the City of New York*, the United States Supreme Court held that while local governmental units cannot be held liable under a theory of *respondeat superior* in § 1983 claims, they nevertheless may be held responsible when the unit's policy or custom inflicts a constitutional deprivation upon a plaintiff. 436 U.S. 658, 694 (1978). In other words, a municipality is "liable only for its *own* illegal acts," rather than those of their employees. *Owens v. Balt. City State's Att'y's Off.*, 767 F.3d 379, 402 (4th Cir. 2014). To state a claim for *Monell* liability, a plaintiff must "plausibly allege that his constitutional harm stems from the acts of a municipal employee taken in furtherance of some municipal policy or custom." *Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 308 (D. Md. 2020) (internal quotations omitted) (quoting *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984)). A plaintiff may establish the existence of a "policy or custom," with the requisite particularity, in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 308 (D. Md. 2020) (quoting *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003)); *see also Owens*, 767 F.3d at 402–03 (holding that plaintiff sufficiently alleged a widespread practice of officers knowingly suppressing exculpatory evidence in criminal prosecutions on multiple occasions, and his allegations, though brief, made out a plausible claim of an "impermissible custom"); *Washington v. Balt. Police Dep't*, 457 F. Supp. 3d 520, 535 (D. Md. 2020) (determining that complaint survived 12(b)(6) stage

because it identified three instances when police department's failure to train officers to disclose *Brady* evidence and failure to modify *Brady* training program led to wrongful convictions); *Harris v. Piedmont Reg'l Jail Auth.*, No. 3:24cv799, 2025 WL 2581839, at *10 (E.D. Va. Sep. 5, 2025) (holding that merely stating that "it was the custom, practice or policy of defendant-jail to inadequately train their employees . . . [or] failing to adequately discourage constitutional violations on the part of their employees" was a conclusory, formulaic recitation of the elements of a *Monell* claim and could not survive a motion to dismiss). Once the plaintiff has identified a policy, custom, or failure to train, he must further allege that the policy was "fairly attributable to the municipality" and that it caused the plaintiff's injury. *Johnson v. Balt. Police Dep't*, 452 F.Supp.3d 283, 308 (D. Md. 2020).

Lawson's *Monell* claim fails at the threshold. A *Monell* claim is predicated on the establishment of a constitutional harm and, as described above, Lawson has not sufficiently alleged that he suffered an unconstitutional detention or arrest. *See Johnson*, 452 F. Supp. 3d at 308. Further, despite the numerous ways to establish the existence of a policy or custom to form the basis of his *Monell* claim, Lawson merely states that "[t]he City of Danville . . . through their policies, customs, and practices, including inadequate training and supervision of police officers, caused and contributed to the constitutional violations described herein." (Compl. ¶ 29.) Later in the Complaint, Lawson expounds on this statement across seven paragraphs without requisite substance, merely reciting the elements of a *Monell* claim in a formulaic manner. (*See id.* ¶¶ 61–67.) *See Twombly*, 550 U.S. at 555. But he fails to identify an unconstitutional policy, custom, or instance of the City's failure to train its officers with the particularity required of an initial pleading. *See, e.g.*, *Washington*, 457 F. Supp. 3d at 535; *Harris*,

- 11 -

2025 WL 2581839, at *10. Even if he were able to identify a policy that caused the alleged Fourth Amendment violations, Lawson has alleged only one instance of a constitutional violation, which is insufficient to establish a "causal nexus." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 694 (E.D. Va. 2004); *see also Jordan by Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994) ("[N]either a policy or custom of deficient training nor the required causal connection can be shown by proof of a single incident of unconstitutional activity alone."). Therefore, he has failed to state a claim for *Monell* liability against the City and his claim must be dismissed.

### d. Count V: Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1983

In the final Count, Lawson alleges that Caesars, John Does #1–3, and Officer Land conspired to cause his unlawful detention and arrest, namely by providing false statements to cause his arrest and "fabricat[ing] evidence supporting the arrest after the unlawful detention had already occurred." (Compl. ¶¶ 75–79.) Before analyzing the claim against Officer Land, the court must dismiss the claim against Caesars and John Does #1–3 because,

> [a]lthough a private person may be considered to act under color of state law if he or she is a "willful participant[ ] in joint activity with state officials," a plaintiff seeking to allege such joint activity must plead "more than a naked assertion of conspiracy between a state actor and private parties." *Worthington v. Palmer*, No. 3:15cv410, 2015 WL 7571822, at *5 (E.D. Va. Nov. 24, 2015). The plaintiff "must plausibly allege that [the] [d]efendants acted jointly in concert, and that some overt act was done in furtherance of the conspiracy that resulted in the plaintiff's deprivation of some constitutional right." *Id.*

*United States ex rel. Angel v. Scott*, 697 F. Supp. 3d 483, 493 (E.D. Va. 2023) (alterations in original) (holding that threadbare allegations that non-state actors conspired with a state congressperson to violate the plaintiff's civil rights were "speculative, conclusory, factually

- 12 -

unsupported, and . . . insufficient to allow the court to consider the non-state actor [d]efendants to be state actors.").

Here, Lawson's Complaint clearly establishes that Caesars and John Does #1–3 are private parties. (Compl. ¶¶ 5, 8 (alleging that Caesars is a limited liability company and that the John Does are its employees).) That these non-state actors merely provided "false information" to the police does not elevate them to the level of quasi-state actors for the purposes of § 1983 liability. (Compl. ¶ 77.) *See Cruey v. Huff*, No. 7:090-cv-000516, 2010 U.S. Dist. LEXIS 118374, at \*11 (W.D. Va. Nov. 8, 2010) ("[C]ourts have held that providing information to the state and pressing for state action against an individual, without more, cannot suffice to make a private entity liable under section 1983 as a state actor." (internal quotations omitted) (quoting *Manax v. McNamara*, 842 F.2d 808, 813 (5th Cir. 1988))). Moreover, as in *Scott*, Lawson alleges only speculatively that Caesars and the John Does "acted in concert" and conspired with Officer Land to violate his civil rights (Compl. ¶¶ 75–79), which is insufficient to state a claim. *See* 697 F. Supp. 3d at 493. Therefore, Lawson has not stated a conspiracy claim under § 1983 against Caesars or John Does #1–3.

The conspiracy claim against Officer Land also fails, though for different reasons. To state a conspiracy claim under § 1983 against a state actor, a plaintiff must establish that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy[,] which resulted in . . . [the alleged] deprivation of a constitutional right." *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996); *see also Massey v. Ojaniit*, 759 F.3d

343, 357 (4th Cir. 2014).[9] Plaintiffs carry "a weighty burden to establish a civil rights conspiracy," and must provide either direct or "specific circumstantial evidence" that the defendants "positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.* at 421.

Lawson alleges that Officer Land "coerced Caesars employees into repeating and affirming incriminating narrative," which he contends is evidence that "Officer Land collaborated with the employees to fabricate evidence supporting the arrest after the unlawful detention had already occurred." (Compl. ¶¶ 18, 78.) Notwithstanding the lack of evidence suggesting that there was a "mutual understanding" to cause Lawson's arrest or fabricate evidence, *Hinkle*, 81 F.3d at 421—the Complaint states only that Officer Land "persuaded the witnesses to provide statements" after the arrest, which is routine in police work (Compl. ¶ 19)[10]—Lawson's own allegations are contradictory. He alleges that the employees reported to Officer Land that he made bomb threats *before* the arrest, which belies his subsequent allegations that Officer Land somehow persuaded or coerced the employees to provide *post-facto* statements to legitimize the arrest. (*Id.* ¶ 10.) Boiled down, Count V is a "formulaic recitation" of the elements of § 1983 conspiracy, devoid of factual support establishing a concerted effort between Officer Land and the other Defendants. Accordingly, the court will also dismiss this final claim. *Twombly*, 550 U.S. at 555.

---

[9] As with Lawson's *Monell* claim, this claim also fails at the outset, given that he has not established a violation of his constitutional rights.

[10] In full, Lawson alleges that "Officer Land did not write [a] contemporaneous description of the alleged incident but instead persuaded casino employees to provide statements supporting the arrest." (Compl. ¶ 19.) It is unclear how Officer Land's alleged failure to provide a police report supports Lawson's conspiracy claim.

## IV. CONCLUSION

For the reasons discussed above, Lawson's claims will be dismissed.

The Clerk is directed to forward a copy of this Order to the parties.

**ENTERED** this 17th day of December, 2025.

                                                */s/ Thomas T. Cullen*
                                                HON. THOMAS T. CULLEN
                                                UNITED STATES DISTRICT JUDGE